HOOPER v. WIST.

Opinion delivered April 7, 1919.

1. JUDGMENT—TITLE TO LAND—RES JUDICATA.—A default decree confirming a party's title to land, though erroneous, is conclusive in a subsequent action between the same parties relating to the title to the same land.

2. JUDGMENT—COLLATERAL ATTACK—PRESUMPTION.—In a collateral attack upon a judgment of a court of general jurisdiction every presumption will be indulged in favor of the jurisdiction of the court and the validity of the judgment.

3. JUDGMENT—COLLATERAL ATTACK.—A suit to have the title quieted to certain lands and asking that a decree in a former suit brought by a land owner adjacent to plaintiff to confirm such adjacent owner's title be reformed, where land affected by such decree constitutes a part only of the land to which plaintiff seeks to have title quieted, is a collateral attack, and not a direct attack, on such decree.

Appeal from Madison Chancery Court; *Ben F. Mc-Mahan*, Chancellor; affirmed.

### STATEMENT OF FACTS.

Frederick T. Hooper brought this suit in equity to confirm his title to certain lands described in the complaint.

The complaint alleges that he is the owner in fee and in possession of certain lands which are specifically described. His complaint first describes 120 acres of land and then describes the following:

"Part of the northeast quarter of the northwest quarter, section 1, township 13 north, range 26 west, beginning at a stone at the northeast corner of the above described one-fourth, thence west 7 chains and 15 links to a stone set in the standard line for the beginning point, thence south 42 degrees west with the middle of the old lane to the west line of said forty, thence north with said line to the northwest corner of said forty, thence east with the standard line 13 chains and 39 links to the beginning point containing 14 acres more or less." (A part of the land just described is the land in controversy in this suit.)

In the second paragraph of his complaint the plaintiff sets forth his muniments of title. In the third paragraph, plaintiff alleges that he and those under whom he claims title, have had adverse possession of all of said lands for more than seven years last past and have continuously paid the taxes thereon for said term of years; that there is no one else in possession of any part of said lands and that there is no one laboring under the disability of infancy, idiocy, or coverture; that there is no one known to the plaintiff claiming any part of said lands unless it be the part of the lands specifically described above; that at the February term of the Madison Chancery Court in 1912 Mary A. Wist filed her petition asking the court to confirm her title to a part of the northeast quarter of the northwest quarter of section 1 north, range 26 west; that both the plaintiff herein and Mary A. Wist

owned land in said forty-acre tract and that a mistake was made in said decree in describing the boundary line in said forty-acre tract between the plaintiff and Mary A. Wist.

The prayer of the complaint is that the title to all said lands be quieted and confirmed in the petitioner, Frederick T. Hooper, and that the chancery decree in the case wherein Mary A. Wist had her title confirmed to the lands in controversy be reformed to speak the truth. Frederick T. Hooper was made a party defendant to the chancery suit of Mary A. Wist to quiet her title to the lands in controversy and Mary A. Wist was made a party defendant to the present suit.

Mary A. Wist filed an answer denying the general allegations of the complaint, and also specifically denying that any mistake was made in the chancery decree rendered at the February term, 1912, of the Madison Chancery Court in the suit of Mary A. Wist to confirm her title to certain lands, including the land in controversy and in which Frederick T. Hooper was made a party defendant. The defendant further alleges that she is the owner of the land in controversy and prays that the plaintiff's complaint be dismissed in so far as it affects the land in controversy.

The plaintiff, Frederick T. Hooper, was a witness for himself. According to his testimony he owned a part of the forty-acre tract of land in which the land in controversy is situated and Mary A. Wist owned the remaining part of said forty-acre tract. There was, at one time, a lane between the two tracts of land and he cultivated up to one side of the lane and Mary A. Wist cultivated up to the other side of it. He always claimed the land down to the old lane. There is a fence there now and the old lane has grown up in bushes. He denied ever signing an agreement that the line between him and Mary A. Wist should be on a line south 45 degrees west. He always considered the old lane the line between them. He was served with summons in the chancery suit of Mary A. Wist to quiet her title to certain lands including the land

in controversy. He was informed that she was not try-
ing to take any of his land and filed no answer in that
case. His testimony was corroborated in the main by
that of his son.

J. W. Wist testified that he was the husband of Mary
A. Wist and acted as her agent in transacting her busi-
ness concerning this land; that his wife had her title to
the land confirmed in the chancery court in 1912, and that
the line in dispute began 7 chains and 15 links from the
northeast corner of the forty and ran south 45 degrees
west to the west line of the forty; that this line was
agreed upon several years ago by Hooper and himself;
that the deed of Hiram Richie to his wife was changed to
correspond with the agreement made between him and
Mr. Hooper.

G. W. Anderson, who was circuit clerk at the time
testified that at the request of the county surveyor he
made a notation on the deed from Hiram Richie to Mary
A. Wist changing the description from 50 degrees to 45
degrees as it now shows.

Three other witnesses for the plaintiff testified that
the middle of the lane was the dividing line between
Frederick T. Hooper and Mary A. Wist; that the lane
was sixteen feet wide and that each party had cultivated
up to his side of the lane.

It was decreed that the boundary line between Frede-
rick T. Tooper and Mary A. Wist be on a line south 45
degrees west in the northeast quarter of the northwest
quarter of section 1, township 13 north, range 26 west,
and that the plaintiff's complaint be dismissed for want
of equity in so far as it affects the defendant's title to
the land in this forty-acre tract.

It is further decreed that the plaintiff's title to all
the other lands described in his complaint be confirmed
in him as prayed for in his complaint. The plaintiff has
appealed.

*W. N. Ivie,* for appellant.

The question at issue is purely a question of fact, and is settled by the evidence. The law is controlled by 100 Ark. 555, 140 S. W. 743.

Appellant has claimed the land and cultivated it for more than seven years and has always recognized the old lane or fence row as the boundary line, a line *visible* and *known,* and 100 Ark. 555 is conclusive of the settlement of a disputed boundary line acquiesced in by both parties to this action and his title should be confirmed.

*Combs & Combs,* for appellee; *J. B. Harris,* of counsel.

Appellant, if he ever had title to the strip of land, is concluded by the decree, after being duly summoned in *West* v. *Pool et al.,* as the court below held. The finding of the chancellor is conclusive as it is clearly not against the preponderance of the evidence. 67 Ark. 287; 68 *Id.* 314; 78 *Id.* 275; 91 *Id.* 549. The decree in *West* v. *Pool* concludes appellant's rights. 41 **Ark. 75. The** court had jurisdiction and did not exceed it as to subject-matter or the parties. Appellant is bound by the findings and decree of the court and is estopped in a subsequent suit to deny a material fact charged in the pleadings and found by the court. 43 Ark. 439; 119 *Id.* 413. See also 57 Ark. 97. The matter is now *res adjudicata* and the judgment should be affirmed. *Supra.*

HART, J., (after stating the facts). The decree of the chancellor was right; for the parties are concluded in the present case by the decree of the Madison Chancery Court rendered at its February, 1912, term in the case wherein Mary A. Wist was plaintiff and Frederick T. Hooper was defendant. In that case, the record shows that Mary A. Wist and Frederick T. Hooper each owned land in the northeast quarter of the northwest quarter, section 1, township 13 north, range 26 west, and the decree specifically fixed the boundary line between them. The chancery court in that case had jurisdiction of the subject-matter of the action and of the parties. The ob-

ject of the suit was to confirm the title of the plaintiff, Mary A. Wist, in the lands claimed by her. A settlement of the boundary lines between her and the defendant in the action was within the issues. It does not matter that the judgment in that case may have been wrong. It was conclusive between the parties until reversed on appeal or set aside in a direct proceeding brought in the same action for that purpose. It is true a default decree was taken in that case, but a judgment or decree by default is as conclusive as any other judgment or decree.

It is well settled in this State that in a collateral attack upon a judgment of a court of general jurisdiction every presumption will be indulged in favor of the jurisdiction of the court and the validity of the judgment or decree. *Crittenden Lumber Co.* v. *McDougal,* 101 Ark. 390; *Clay* v. *Barnes,* 121 Ark. 474, and *Jones* v. *Ainell,* 123 Ark. 532.

This brings us to a consideration of whether the present case is a direct or collateral attack on the former chancery decree. A direct attack on a judgment is usually defined as an attempt to reform or vacate it in a suit brought in the same action and in the same court for that purpose. On the other hand a collateral attack upon a judgment has been defined to mean any proceeding in which the integrity of a judgment is challenged, except those made in the action wherein the judgment is rendered, or by appeal, and except suits brought to obtain decrees declaring judgments to be void *ab initio.* 15 R. C. L. 838, par. 311. This is the effect of our decisions in the cases above cited as well as numerous other decisions of the court.

In the present case the plaintiff brought suit to have his title quieted to certain lands specifically described in his complaint. It is true that when he comes to the lands in controversy, he does ask that the decree in the former chancery suit brought by Mary A. Wist to confirm her title to the same land in which he was made a party defendant, be reformed, but this does not prevent this being a collateral attack on the decree in that action.

In *Cassady* v. *Norris,* 118 Ark. 449, the court held that if an action or proceeding has an independent purpose and contemplates some other relief, although the overturning of a judgment may be important or even necessary to its success, then the attack upon the judgment is collateral.

In Vanfleet's Collateral Attack on Judicial Proceedings, paragraph 3, the author says:

"A collateral attack on a judicial proceeding is an attempt to avoid, defeat or evade it, or to deny its force and effect in some manner not provided by law. As there are only two ways to attack a judicial proceeding, direct and collateral, it is obvious that this definition complements the one in the last section, and they are both self-evident. Any proceeding provided by law for the purpose of avoiding or correcting a judgment, is a direct attack which will be successful upon showing the error; while an attempt to do the same thing in any other proceeding is a collateral attack, which will be successful only upon showing a want of power."

In Black on Judgments (2 ed.), vol. 1, par. 252, the rule is stated as follows:

"We are next to inquire what constitutes a collateral attempt to impeach a judgment within the meaning of the rule prohibiting such endeavors. And here we shall find that the word "collateral" is always used as the antithesis of "direct" and it is therefore wide enough to embrace any independent proceeding. To constitute a direct attack upon a judgment, it is said, it is necessary that a proceeding be instituted for that very purpose. If an appeal is taken from a judgment, or a writ of error, or if a motion is made to vacate or set it aside on account of some alleged irregularity, the attack is obviously direct, the sole object of the proceeding being to deny and disprove the apparent validity of the judgment. But if the action or proceeding has an independent purpose and contemplates some other relief or result, although the overturning of the judgment may be important or even necessary to its success, then the attack upon

the judgment is collateral and falls within the rule. Thus, whether a judgment is irregular or erroneous is not a legitimate inquiry in a suit brought for its enforcement.''

In the application of these principles to the facts of the present case, it is apparent that this is not an action to set aside the decree in which Mary A. Wist was the plaintiff and Frederick T. Hooper was the defendant, entered of record at the February, 1912, term of the Madison Chancery Court. The main object of the present suit is to quiet the title of Frederick T. Hooper to certain lands, and the reformation of the decree in the former suit is also asked.

Under the authorities cited above this action is a collateral attack upon the decree in the former case and the decree in that case must of necessity be conclusive of the rights of the parties. See *Kalb* v. *German Savings & Loan Society* (Wash.), 87 Am. St. Rep. 757; *Kizer* v. *Caufield* (Wash.), 49 Pac. 1064, and *Morrill* v. *Morrill* (Ore.), 23 Am. St. Rep. 95.

The principle is stated in the last mentioned case as follows: ''If she neglected or failed, without some reasonable excuse, to produce all of the evidence in her possession in that suit, it is now too late for her to be heard to complain. There must be an end to litigation, and where a party has an opportunity to present his defense and neglects to do so, the demands of the law require that he should take the consequences, when the judgment or decree is sought to be enforced against him in a collateral proceeding.''

The matter set up in the present action by the plaintiff was not made a ground of defense to the former suit between Mary A. Wist and himself and having failed to set it up in that action the plaintiff can not be heard to urge it in a collateral attack on the decree in that suit.

It follows that the decree must be affirmed.